IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| NEW ENTERPRISE STONE & LIME CO., INC., | ) | Case No. 3:18-cv-4 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL UNION NO. 110, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

Pending before the Court is Plaintiff New Enterprise Stone & Lime Company, Inc.'s ("NESL") Motion for Summary Judgment (ECF No. 26) and Defendant Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 110's (the "Union") Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23). These motions have been fully briefed and are ripe for disposition. (*See* ECF Nos. 24, 25, 27, 28, 30-33.)

This case arises from a dispute over the arbitrability of a grievance filed by Charles Frye (the "Frye Grievance"), who was an employee of Plaintiff and represented by Defendant. In short, Frye sought to take his grievance over vacation pay entitlement to arbitration under the terms of the collective bargaining agreement (the "CBA"). The present case ensued when Plaintiff filed its Complaint in this Court seeking a declaratory judgment that the Frye Grievance is not arbitrable.

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 26) is **DENIED**, and Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

## II. Jurisdiction and Venue

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this is an action against a labor organization under the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et. seq.* (*See* ECF No. 1 ¶¶ 7–13; ECF No. 7 ¶¶ 7–13.) Venue is proper in the Western District of Pennsylvania pursuant to 29 U.S.C. § 185(a), (c), under which venue is proper in any district court in the United States having jurisdiction of the parties.

## III. Procedural History

Plaintiff initiated this lawsuit by filing the Complaint on January 4, 2018. (ECF No. 1.) Plaintiff seeks a declaratory judgment that the Frye Grievance is not arbitrable and that Plaintiff has no obligation to arbitrate the Frye grievance under the CBA. (*Id.* ¶¶ 43–49.) Plaintiff also seeks to enjoin Defendant from proceeding in arbitration on any issues concerning the Frye Grievance. (*Id.* ¶¶ 50–54.)

In response, Defendant filed an Answer on March 4, 2018, asking the Court to deny Plaintiff's requests for injunctive and declaratory relief and bringing a counterclaim against Plaintiff to compel arbitration. (ECF No. 7 ¶¶ 54–62.) Plaintiff filed an Answer to the Counterclaim on March 4, 2018. (ECF No. 8.)

Defendant filed this Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23) on September 30, 2018. Plaintiff filed its Motion for

Summary Judgment (ECF No. 26) the next day on October 1, 2018. The briefing and responses on these motions concluded on October 31, 2018. (*See* ECF Nos. 24, 25, 27, 28, 30–33.)

## IV. Factual History

The following facts are undisputed unless otherwise noted.[1]

Plaintiff and Defendant have been parties to several, successive collective bargaining agreements covering NESL employees at its Roaring Spring, Blair County, Pennsylvania facilities, including Charles Frye. (ECF No. 1 ¶ 14.) The relevant CBA between Plaintiff and Defendant went into effect on December 15, 2015, and expired on January 31, 2019. (*Id.* ¶ 15; ECF No. 1-2.) The CBA contains a grievance and arbitration procedure in Article 16. (ECF No. 1 ¶ 16.) Section 16.01 of the CBA states that "[NESL] and the Union agree to the following [arbitration] procedure for the adjustment of any grievances or disputes arising from the imposition of discipline or the alleged violation of any of the Articles of this Agreement." (*Id.* ¶ 16; ECF No. 1-2 at 16.) Article 13 of the CBA provides for NESL employees' vacation eligibility. (ECF No. 1 ¶¶ 17–19; ECF No. 1-2 at 13–14.) Specifically, Section 13.01 of the CBA states that "[a]ll employees covered by this agreement shall be eligible for such vacations as are hereinafter set forth," provided that certain requirements are met by the employee. (ECF No. 1-2 at 13.)

In September 2017, Mr. Frye gave notice to Plaintiff that he would retire from NESL in October 2017. (ECF No. 1 ¶ 21.) After making his retirement announcement, Mr. Frye asked Plaintiff whether he would receive vacation pay in 2018 for the vacation that he worked for in 2017. (*Id.* ¶ 25.) Plaintiff told Mr. Frye that he would not receive such vacation pay in 2018,

---

[1] The Court derives these facts from the Complaint (ECF No. 1) as it is required to do so when assessing a motion for judgment on the pleadings. These material facts are undisputed as stated in the Answer (ECF No. 7).

-3-

because his retirement date would preclude his working on or after January 1, 2018. (*Id.* ¶ 26.) Mr. Frye retired on October 27, 2017. (*Id.* ¶ 31.)

Plaintiff has not paid Mr. Frye any vacation pay for 2018. (*Id.* ¶ 32.) On November 14, 2017, Mr. Frye filed the Frye Grievance, alleging that he was entitled to be paid in 2018 for vacation days which he worked in 2017. (*Id.* ¶¶ 33–34.) Letters regarding the merits of the Frye Grievance were exchanged between the parties until the present case was filed in this Court. (*Id.* ¶¶ 35–41.)

## V. Legal Standard

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Courts must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* (quoting *Rosenau*, 539 F.3d at 221). The facts presented in the pleadings include those from exhibits attached to the pleadings. *See* Fed. R. Civ. P. 10(c).

### B. Summary Judgment

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d

Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just

bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI. Discussion

### A. The Parties' Arguments

Defendant argues that the Frye Grievance is substantively arbitrable under the three-step analysis of *USW, AFL-CIO-CLC v. Rohm & Hass Co.*, 522 F.3d 324, 331 (3d Cir. 2008). (ECF No. 24 at 9–11.) To determine if a grievance is substantively arbitrable, the Court must determine: 1) whether the present dispute comes within the scope of the arbitration clause; 2) whether any other provision of the contract expressly excludes the present dispute from arbitration; and 3) whether there is any other "forceful evidence" indicating that the parties intended such an exclusion. *Id.* Defendant alleges that the Frye Grievance falls within the CBA because it states a violation of Article 13, the vacation entitlement provision of the CBA. (*Id.* at 11.) The parties agreed in Article 16 that arbitration would be the procedure to resolve "any grievance or dispute" arising from an alleged violation of any article of the CBA. (*Id.*)

Defendant asserts that disputes over vacation entitlement fall within the scope of the arbitration clause of the CBA, making the Frye Grievance arbitrable. (*Id.*) Next, Defendant asserts that there is no clause in the CBA that expressly excludes disputes over vacation entitlement from the arbitration clause. (*Id.* at 13.) Defendant points to the language of the CBA, which expressly excludes certain disputes from arbitration (such as the termination of temporary employees under Article 9) and does not contain any similar exclusionary language for disputes over vacation entitlement. (*Id.*) Finally, Defendant argues that Section 24.03 of the CBA is not "forceful evidence" indicating that the parties intended the Frye Grievance to be excluded from

-6-

arbitration. (*Id.* at 16.) Defendant states that under *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977), if there is an interpretation of a CBA that covers the asserted dispute, the court must adopt that interpretation. (*Id.*)

Plaintiff argues that because Frye retired before January 1, 2018, Frye was not an employee as of that date. (ECF No. 27 at 5–6.) He was therefore not subject to Article 13 of the CBA. (*Id.* at 6.) Plaintiff argues that the Frye Grievance is not predicated on any specific provision in the CBA because Mr. Frye was not covered by the CBA. (*Id.* at 7.) Therefore, the parties did not agree to arbitrate the Frye Grievance and Defendant is not entitled to a presumption of arbitrability. (*Id.*)

Plaintiff also asserts that Defendant is trying to incorporate a provision of a prior CBA that provided for retiree vacation pay benefits into the current CBA. (*Id.* at 11.) Because there was no express intent to incorporate that provision, Defendant cannot rely on it to make the Frye Grievance arbitrable. (*Id.*) Under an examination of the CBA, the Frye Grievance does not fall within the "zone of interests" protected by the CBA because it does not plausibly allege any violation of the current CBA. (*Id.* at 5.) Plaintiff concludes that it is entitled to a declaration that the Frye Grievance is not substantively arbitrable and that Defendant cannot take further steps to attempt to arbitrate it. (*Id.* at 12.)

### B. Defendant Is Entitled to Judgment on the Pleadings Because the Frye Grievance Is Substantively Arbitrable

The Court is presented with a single issue at this stage: whether the Frye Grievance is substantively arbitrable. If the Frye Grievance is arbitrable, this Court must dismiss the Complaint and grant judgment in favor of Defendant. If the Frye Grievance is not arbitrable, this Court has discretion as to whether to issue declaratory or injunctive relief in favor of Plaintiff.

The issue of whether Mr. Frye is entitled to vacation pay is not the issue presently before this Court. The merits of the underlying dispute may not be determined at this stage in the proceeding. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960).

There are no disputes of material fact regarding the language of the CBA nor the allegations of the Frye Grievance. Both parties have consented to the arbitration clause in Article 16 of the CBA. The Court must now determine which party, if any, is entitled to judgment as a matter of law.

By the plain language of the CBA, the Frye Grievance is substantively arbitrable. To determine if a grievance is substantively arbitrable, the Court must determine: 1) whether the present dispute comes within the scope of the arbitration clause; 2) whether any other provision of the contract expressly excludes the present dispute from arbitration; and 3) whether there is any other "forceful evidence" indicating that the parties intended such an exclusion. *Rohm & Hass Co.*, 522 F.3d at 331. This Court holds that the Frye Grievance alleges a grievance that is arbitrable under the CBA, no other provision of the CBA expressly excludes that kind of grievance from arbitration, and there is no forceful evidence in the CBA that the parties intended to exclude the grievance from arbitration.

### 1. Disputes over Vacation Pay Entitlement Are Within the Scope of the Arbitration Clause of the CBA

The Frye Grievance alleges a grievance that is arbitrable under the CBA. For a grievance to be arbitrable "the subject matter of the grievance [must be] one that is within the zone of interests that have received protection in the collective bargaining agreement and one that the parties have agreed to arbitrate." *Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union,*

*Local 1776*, 595 F.3d 128, 133 (3d Cir. 2010) (internal quotation marks omitted) (quoting *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 95 (3d Cir. 1987)). Additionally, when the parties have a collective bargaining agreement containing an arbitration provision, there is a presumption in favor of arbitrability. *Lukens Steel v. United Steelworkers of Am.*, 989 F.2d 668, 673 (3d Cir. 1993) (citing *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)). That presumption applies here.

The grievance and arbitration procedure of Article 16 of the CBA is broad. Plaintiff and Defendant agreed to use Article 16 to resolve "any grievances or disputes" arising from an "alleged violation of any of the Articles of this Agreement." (ECF No. 1-2 at 16.) Although it is not so broad as to include any dispute between the parties, it requires any allegation of a violation of the CBA to go through the Article 16 process. (*Id.*) Article 16 describes the dispute resolution process and provides that "the matter may be referred to arbitration" in which "[t]he decision of the arbitrator shall be final and binding on the parties." (*Id.* at 17.) Article 13 can be violated if Plaintiff does not provide vacation benefits to a NESL worker who is entitled to them. (*Id.* at 13.) Article 13 applies to "[a]ll employees covered by this Agreement" and the CBA was effective between 2015 and 2019. (*Id.*, ECF No. 1 ¶ 15.) The covered employees include "Roaring Spring truck drivers and production and maintenance employees." (ECF No. 1-2 at 4.)

The parties do not dispute that Mr. Frye was a Roaring Springs employee when the CBA was in effect. (ECF No. 1 ¶¶ 14–15.) Moreover, the grievance was filed on November 14, 2017, which was during the term of the CBA. (*Id.* ¶ 33.) Because Mr. Frye was an employee during the term of the CBA and filed his grievance within that term, Mr. Frye was an employee covered by the CBA and entitled to the benefits and procedures of the CBA.

The Frye Grievance alleges that Plaintiff violated Article 13 of the CBA by denying Mr. Frye vacation benefits he earned in 2017. This grievance falls squarely within the plain language of the arbitration clause because it is an alleged violation of an article of the CBA. This is an interpretation consistent with "ordinary principles of contract law." *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015).

Plaintiff asserts that *Cup v. Ampco-Pittsburgh Corp.*, 903 F.3d 58 (3d Cir. 2018) controls this case. It does not. *Cup* is distinguishable in important aspects from the present case. In *Cup*, the union member filed a grievance under a CBA that was adopted after he retired. *Id.* at 60. He attempted to use the arbitration procedure in the new CBA to arbitrate health care benefits for retirees that were provided for in a separate document called the memorandum of understanding. *Id.* The memorandum of understanding did not contain an arbitration clause. *Id.* Additionally, the claim for retiree healthcare benefits did not fall within the scope of the arbitration clause in the CBA. *Id.*

The Court held that former employees "who retired *before* the CBA went into effect" were not employees under that CBA because they had to be "employees . . . as of the date of this Agreement." *Id.* at 63 (emphasis added). Therefore, the retirees could not use the arbitration procedure in the CBA because they were not covered by the CBA. *Id.* The Court also held that the CBA did not incorporate the memorandum of understanding because there was no express intent to incorporate it in the CBA. *Id.* at 64.

*Cup* is distinguishable from this case in three ways. First, the parties agree that Mr. Frye was a NESL employee during the term of the CBA, which was effective between 2015 and 2019. The union members in *Cup* had retired before the CBA was effective, so they could not be

-10-

employees under the CBA. Second, the document providing for the benefits that gave rise to the Frye Grievance was the CBA itself, which contained an arbitration clause for that type of grievance. In *Cup*, the document providing for the benefits that gave rise to the retirees' grievance was separate from the CBA and did not contain an arbitration clause. Third, Defendant is not trying to incorporate another document into the CBA here. Plaintiff misstates the nature of Defendant's argument. Defendant is not arguing that because retirees were mentioned in a prior CBA, that reference was incorporated here. Instead, Defendant is asserting that Mr. Frye was a NESL employee under the CBA and the language in that CBA provides for vacation pay which Mr. Frye did not receive. That type of grievance falls within the plain language of the CBA. The arbitration provision exists as a way for workers like Mr. Frye to arbitrate disputes under the CBA with Plaintiff. This Court therefore concludes that the Frye Grievance is within the "zone of interests" receiving protection in the CBA and is a grievance that the parties have agreed to arbitrate.

### 2. No Other Provision of the CBA Expressly Excludes Disputes over Vacation Pay Entitlement from Arbitration

The CBA does not include any language that excludes the Frye Grievance from the broad coverage of Article 16's grievance and arbitration procedure. Although the coverage of Article 16 is broad, certain subjects are excluded from the grievance and arbitration procedure in the CBA. For example, Section 9.01 states that "probationary employees shall have no seniority rights and may be disciplined, terminated or laid off at any time in the sole discretion of the Company, not subject to the grievance and arbitration procedure." (ECF No. 1-2 at 7.) Article 13 contains no similar exclusionary language. (*See id.* at 13–14.) The parties' express exclusion of other

categories of subject matter from the arbitration clause indicates the parties knew how to limit the categories of arbitrable subject matter. *See, e.g., Lukens Steel*, 989 F.2d at 673 n.4 (citing *Eichleay Corp. v. Int'l Ass's of Bridge, Structural Ornamental Iron Workers*, 944 F.2d 1047, 1058 (3d Cir. 1991)). Under *Rohm & Hass Co.*, the absence of an express exclusionary provision here means that the Frye Grievance is not excluded from Article 16. 522 F.3d at 331.

Plaintiff is unable to point to any provision of the CBA that expressly excludes this type of Article 13 grievance from the scope of the arbitration clause in Article 16. Plaintiff relies on Section 24.03 of the CBA to assert that it excludes the Frye Grievance from arbitration. However, Section 24.03 does not bar any particular types or kinds of grievances. It instead states that the CBA cancels and supersedes all previous agreements of the parties and represents the full agreement of the parties. (*See* ECF No. 1-2 at 22.) It makes no mention of the exclusion of grievances like the one filed by Mr. Frye. Because the Frye Grievance falls within the scope of the arbitration clause of the CBA and there is no other express provision excluding the grievance from arbitration, the Frye Grievance is substantively arbitrable.

### 3. The CBA Contains No Forceful Evidence Indicating that the Parties Intended Disputes over Vacation Pay Entitlement to Be Excluded from Arbitration

There is no other evidence outside of the language of Article 13 in the CBA that indicates that the parties intended the Frye Grievance to be excluded from arbitration. Absent express exclusionary language in the CBA, Plaintiff must overcome a strong presumption in favor of arbitrability. "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

-12-

that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Nolde Bros.*, 430 U.S. at 255.

As discussed, the arbitration clause of Article 16 of the CBA is susceptible to an interpretation that encompasses the Frye Grievance. That interpretation is also the most straightforward interpretation under the plain language of the CBA. A critical examination of the whole CBA shows that there is no forceful evidence that the parties intended the Frye Grievance to be excluded from arbitration. Section 24.03 does not provide such forceful evidence. As discussed, that provision states that the CBA cancels and supersedes all previous agreements of the parties and represents the full agreement of the parties. (*See* ECF No. 1-2 at 22.) That provision cannot be fairly interpreted as excluding grievances like the Frye Grievance from the scope of the arbitration clause. Plaintiff has failed to show that the parties intended the Frye Grievance to be excluded from arbitration. The Frye Grievance is therefore substantively arbitrable.

Because the Frye Grievance is substantively arbitrable, Defendant is entitled to judgment on the pleadings.[2]

---

[2] In the alternative, this Court grants the motion for summary judgment in favor of Defendant. The Court grants judgment on the pleadings here because the undisputed facts necessary to decide the motion came from the Complaint and the CBA attached to the Complaint. Under a summary judgment standard, the Court would be able to look outside the pleadings, but still would only find it necessary to look at the Complaint and the CBA to decide in favor of Defendant. Under both standards, the Court must determine if a party is entitled to judgment as a matter of law, which the Court has determined is the Defendant.

## VII. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 26) is denied, and Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23) is granted. The Complaint is dismissed with prejudice.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW ENTERPRISE STONE & LIME CO., INC., | Case No. 3:18-cv-4 |
| Plaintiff, | JUDGE KIM R. GIBSON |
| v. | |
| TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL UNION NO. 110, | |
| Defendant. | |

### ORDER

NOW, this 10th day of September, 2019, upon consideration of Plaintiff's Motion for Summary Judgment (ECF No. 26) and Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 26) is **DENIED**, and Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE